Klaussner Furniture Industries, Inc. v. Klaussner Furniture Industries, Inc. v. Klaussner Furniture Industries, Inc. Klaussner Furniture Industries, Inc. v. Gaines Motor Lines, Your podium is too far from your table. May it please the Court, my name is James Dean and I represent Klaussner Furniture Industries, Inc. This case is a simple breach of contract action. Resolving the case only requires looking to the intent of the parties and not resolving any issue of federal law. I'd like to start off by addressing some of the questions that were raised. So your client won below, but your client didn't think that we ought to let it keep the victory? Unfortunately, that's the case. And, Your Honor, it's sort of the concept of mutually assured destruction I think comes into play. If you can't preserve a victory, what's the point of having the victory? If we were to prevail here on the merits, given the posture of what we believe the statute of limitations is, that victory would not be secure. Because statute of limitations can be challenged even after a court of appeals has ruled on a case. Well, I thought too you might say sometimes there are obligations above that, have an obligation to the court and the law to express what you think the law is, even if it hurts you some. I think that's what you meant. Same result. Same result. Judge Duncan said that's how she translated what you said. I agree with the learned Judge Duncan. Okay. There is no basis, though, in this case for federal subject matter jurisdiction under federal question doctrine because the case doesn't arise under any federal statute. In particular, some of the ones that were named in Mr. Mosley's argument were federal statute of limitations. And as Judge Duncan pointed out, the federal statute of limitations doesn't necessarily mean that a federal cause of action exists. It means that there is a federal statute of limitations for those cases that fall within federal jurisdiction. There is still federal jurisdiction over cases that involve a federal filed-rate tariff. Because a filed-rate tariff has the force and effect of federal law, any case that's brought under one of those tariffs necessarily arises under federal law. You know, a lot of cases that you see, district courts throughout the country, saying there is no jurisdiction on a lot of these cases, doesn't this slip through, do you think? Do you think this just slipped through the federal court? I don't know. It was raised. I would say that it wasn't argued below because I don't think it was as apparent to Klausner. Facts came up after this order were entered. And because in the complaint, the subject matter jurisdiction basis raised was 13706, but as was indicated earlier, that really didn't come into play in the litigation because 13706 sets out the liability of a consignee, not the liability of a shipper. No consignees are involved in this case. And so I think there was a sort of, I would concede that there was a lack of recognition of the issue that was brought to light. Maybe a wait and see sort of, depending on how the case unfolded. Perhaps. I just think that perhaps because it wasn't challenged before the magistrate judge, that it wasn't brought to his attention in a way that made him look at it more deeply. And certainly neither of the parties were looking at it as deeply at that point. One of the other points that was raised in the argument is that the regulations, because there were regulations that deal with credit and investigation of claims, that somehow that creates federal jurisdiction. And the regulations that were cited were in Section 49 of the Code of Federal Regulations, Part 377. And I wanted to point out that those regulations don't actually apply to this type of shipping on their face. So if you look at Part 377, it's separated into two chapters, Part A and Part B. The first chapter begins with 377.101. That first statute says applicability, and it states that those regulations are only applicable to cases that are brought pursuant, shipping that's non-pursuant, to a filed rate tariff. It specifically references 49 U.S.C. 13702, and that's the specific statute that we're talking about that refers to the two categories of trade that still require a federally filed tariff. If you move on to the second part of Part 377, which would be Chapter B, which talks about credit regulations, again, the first statute is 377.201, scope. Part B, exceptions, says that the regulations don't apply to contract tariffs. Let me shift gears on you. I understand, and I think the panel understands your argument on jurisdiction, but let's talk about the merits for just a minute. Why would we affirm on the merits of this case? What's your argument on the merits of the case? Well, because the intent of the parties, which controls contract interpretation, clearly indicated that only Salem was intended to be liable. How do we know that, based on what document? The same questions I ask of the other side. What document or documents do you look to and what language do you look to to establish that? By the way, if you have trouble finding those specifically for whatever reason, just tell me generally. Sure. The bill of lading is part, and then what the court needs to keep in mind, as the district court did, is that the bill of lading was only part of the total agreement between Klausner, Salem, and the carriers that provided for the shipment of Klausner's goods. There was also a confirmation of verbal rate agreement between Salem and the carriers, and there was a pickup and delivery schedule between Salem and the carriers. What about the absence of a third-party designation? I mean, the bill of lading, which was drafted by Klausner, specifically contains a blank for third-party, and yet it wasn't checked. Isn't that the strongest evidence that this was not a third-party situation? I don't think so, and for two reasons, Your Honor. One is that there isn't actually any evidence in the record about what third-party means, and so we could presume or speculate about its meaning, but there isn't any evidence that it means. But as it set out in the bill of lading, it does suggest who's going to be paying because the first entry there in that lower right-hand corner says prepaid, and that's marked, and the one next to it is not marked, and it says collect, and then the one next to it, also not marked, says third-party. All right. So the linear setting out of three different categories of types of payment suggests that what you're talking about is what kind of payment is this, and it's prepaid according to what the party said on the form designed by Klausner. I agree with what you're saying, but I think that Klausner used the term prepaid not as a designation of who will pay but as a designation of who won't pay. That section of the bill of lading was used by Klausner as a limitation on liability, and I disagree with Mr. Mosley. I'm sorry. I didn't mean to cut you off, Mr. Dean. Please go ahead. Well, I just wanted to point out that Mr. Mosley said that there was not a case that disagreed with his definition of prepaid, that is that prepaid means the shipper will pay. Actually, the Ninth Circuit case of Oak Harbor says clearly that prepaid, if signed on the bill of lading, releases the consignee from liability. That's exactly how Klausner stated what the intent was of Klausner in filling out the prepaid designation. And another thing to point out is that because Klausner was using that to limit the liability of the consignee, checking the additional box of third party would not have actually accomplished that purpose because if you look in Oak Harbor again, and Oak Harbor is slightly confusing because the shipper was also the consignee and he was ultimately liable for payment because it was Sears. Sears did not fill out the non-recourse clause for shipments that were outbound and it did not check the prepaid clause for inbound shipments. Well, what about our Hawkspear case? How does that figure into the analysis? Well, I think that Hawkspear certainly stands for the general proposition that absent a release from liability, the consigner is liable for payment. That's certainly the rule, but in Hawkspear the court noted that no release had been obtained. And here you have a non-recourse clause that is checked and the Supreme Court has said that the obvious purpose of a non-recourse clause is to insulate the shipper from liability. I mean, by signing the non-recourse clause, Klausner clearly indicated and the carriers accepted that Klausner wouldn't be liable. Isn't it the case that in Hawkspear the court said only if the carrier has released the shipper from liability under the bills of lading is the shipper discharged from his duty? And so it'd be odd to say in the Hawkspear the consigner is liable if he doesn't release in the bill of lading and he is responsible if he does release in the bill of lading. That's exactly right, Your Honor. He has to be able to protect himself in that bill of lading. Now, let me just ask this. What do we do to the extent... Let me say this. It strikes me in looking at the bill of lading that the better reading, for sure, of the prepaid is just a question that the consignee is not to be asked for money again. That looks like that's what that does. And it tells the shipper, don't bug that guy for money when you get there. He's already paid for the shipment. But what do we do... What do we do in light of the fact that... Is there an inconsistency between those two? You know, if it's read another way, you know, if it's read the way that... And could it be read the way that the other side wants to read it? That prepaid is some kind of term of art in the shipping industry that says you've already paid to the consignor. It could not be read the way that the carriers want it to be read because that would necessarily render the prepaid clause and the nonrecourse clause irrational. Well, that's what they say. I think that's what they say. Your Honor, in contract construction, the court is supposed to read all clauses of a contract consistently if there is a plausible reading, and you just gave one. A shipper faced a shipper that goes to pick up some goods. I'm not exactly sure when the bill of lading is given to the shipper. But then what should a shipper do when a shipper sees a bill of lading like this one? What should the carrier do? I'm sorry, I'm sorry. I mean the carrier. I mean the trucking company, whoever. What should they do to protect their interest in light of this language that's confusing to them perhaps? Well, the Supreme Court gave some suggestions in Illinois Steel that I think would apply. One is they could refuse to deliver the goods until they receive payment. They could keep the trucks closed and not let the furniture go out the back end until their account is filled. Or at least until they had it clarified how they were getting their money. That's right. They could also extract a guarantee of payment from one of the other entities, either the shipper or the broker. Let me ask you this. This may or may not be in the record. I've puzzled over this. You know, hundreds of thousands of dollars involved in here. Why would shippers with that option, with this language, why would they continue just to ship hundreds of thousands of dollars worth of goods? Well, I think because if you look at the full record, they clearly expected Salem to pay and they had extended credit to Salem. And there is no record about whether they believe the creditworthiness of Salem. So I can't speculate about that. But it's clear that they expected that Salem was going to pay them. And I think that the extension of credit to Salem is potentially dispositive in answering the question of who they expected to pay. So either they thought Salem was going to pay under the facts of this case, or they just thought that they would get money from somebody and perhaps if they didn't haul, somebody else would haul, so they might as well at least have a chance of getting paid maybe? I mean, it would just be speculating, but I believe that they did think that Salem would pay them. And I think that they, you know, my speculation would be that they believed Salem was going to be solvent and able to do that, able to make that payment. So I just want to go back now to the bill of lading argument. Do you think you can win this case on the merits, if we get to the merits, just on the bill of lading? Because you make an argument about giving construction that gives meaning to every word. Do you think you win on just that? Or do you think you have other information that helps you? I want to hear your full argument on that. I think that we could win on the merits just based on the bill of lading. But I would say that the court has to define the intent of the parties and can look to the other circumstances, which I think confirm Klausner's reading of the bill of lading. As the district court pointed out, the only party that testified about the meaning of the bill of lading was Klausner. Its CFO testified that the prepay clause was meant to protect the consignee. The nonrecourse clause was to protect Klausner from double payment, the exact thing that the carriers are trying to extract here. The other evidence that I think is most helpful are the separate agreements that the carriers had with Salem, which indicated that the carriers were billing to Salem, were using Salem invoice numbers, and were providing their proof of delivery to Salem, and in fact were being paid by Salem. The other thing that I pointed out earlier is that the carriers extended credit to Salem. And there are some cases, like the National Shipping of Saudi Arabia case, I believe, is one where the court has found the extension of credit to actually be a dispositive factor, or potentially a dispositive factor. That if you extend credit to the freight forwarder or the broker, that that's the party that you can look to for payment. And it's clear under North Carolina law, there was some discussion of this in the briefs, but it's clear under North Carolina law, and in other cases involving this area, that the court is well within its bounds to look at these other facts and circumstances that surrounded not only the entry into the agreement, but the way that the agreement, in fact, was carried out among the parties.  I don't want to change topics, Your Honor. You can change topics if you'd like to. I think everybody else in the room might appreciate it if you did. I wanted to go back just to the subject matter jurisdiction, because I'm not sure that we covered all of the potential bases that were articulated, and we didn't have an opportunity to respond to the bases that were articulated in the brief. You can use your time to do that.  You can do it for five minutes. The preemption argument in particular I wanted to point out, because the cases that were cited in their brief for the argument that these matters are simply preempted by a provision of the Interstate Commerce Commission Termination Act don't actually support the premise that this case would be preempted. If you read the cases that they've cited, they go back to airline deregulation in the American Airlines v. Woollens case that the Supreme Court decided, and the UPS case that they cited deals with this specific statutory framework that we're talking about here, the ICCTA, and it's clear that breach of contract matters are not preempted. There has to be a state regulation of trade for there to be preemption. So, for example, if they had sued Klausner and alleged a violation of North Carolina's Unfair and Deceptive Trade Practices Act because of some type of egregious breach of contract, we would have argued that that is preempted because it is a state regulation. But a breach of contract itself is simply the parties imposing upon themselves certain duties and obligations, and courts have consistently found, including all the cases that they've cited, have consistently found that there is no preemption. Another case that they cited as a potential basis for going against the number of district courts who have found that federal question jurisdiction doesn't exist is the Old Dominion case. I do want to point out that is an Eastern District of New York case that relied for its holding on a Supreme Court case that predated deregulation and that depended on jurisdiction, depended on the fact that the tariffs were filed. Well, the Eastern District of New York revisited this same issue in the GMG Trans West case that we cited in 2010 and said that Old Dominion, if a non-filed rate tariff was at issue, was erroneously decided and affirmed that, in fact, there is no federal question jurisdiction. Could I ask why I find a number of unpublished opinions on point and a variety of district court opinions on point, but I found no circuit authority on point. Is that your experience also? Yes, Your Honor. I have not found any circuits that have answered this question directly, although there are cases in which circuit courts in discussing other issues recognize that there is no federal jurisdiction. There is the case of, this goes to the statute of limitations issue, but there's a case of Emirate Industries. It's 497 F3rd 982. It merely mentions that there's no federal jurisdiction and goes on to say that that's not a problem for the application of a federal statute of limitations and says that the federal statute of limitations can be applied to a state court cause of action, even in the absence of federal question jurisdiction. So it seems like at least the Ninth Circuit has agreed with this premise, but I believe this precise formulation of the issue is one of first impression for this court. Thank you. And just the last point, 14101, I do want to point out that that statute provides, it says an exclusive remedy that must be brought in an appropriate state or federal court, but the point of that statute, as multiple cases have decided, like the Transit Homes 2 case in Alabama, is that no longer is the remedy for these contract matters administrative. It's federal, and there is no language that grants jurisdiction in that statute. If you look at the Carmack Amendment, which is section 14706, you can see an example of how in the ICTA jurisdiction is specifically granted, and it says that an action may be brought in a federal district court. It doesn't have the admonition of inappropriate on it. So it simply designates in 14101 that this is now a matter for judicial, not administrative oversight, and that the words inappropriate simply mean that the court must otherwise have a basis for jurisdiction. So in federal jurisdiction, the example would be diversity. Unless the court has any additional questions, I'd simply say that, again, this is a contract case. The intent of the parties, as discerned by the district court, is that only Salem should be liable. So in the event the court finds it has subject matter jurisdiction, the district court should be affirmed. Thank you very much. Mr. Mosley? Thank you. I would go back to what's described as the bedrock rule, is that the carrier gets paid. Addressing 14101B, the statute clearly does say that a claim may be filed in an appropriate federal or state court. But it doesn't say when it's appropriate. And there are instances where it is appropriate because a tariff has to be filed. And I would say to that, Congress didn't exactly write clearly when... What a shock. When they did away with the distinction between common and contract carriage and created just one motor carrier. And so we have this Part 135... Then the courts got in the middle of it and made it much more clear, correct? That's right. And so what we have is... The motor lines case, which was the United States Supreme Court saying it is. And then we... Since then, we haven't had Congress say it isn't. And so obviously you guys are in the position of being the first circuit court to address it. And we'll have to cross that bridge for us. Judge Shedd, you mentioned... We were talking earlier about specific documents that might have a play on this. Right. And certainly we believe the bill of lading is the operative document. The letter that I refer to is in the record at 424, the one that has care of... Is it your argument that we look to documents beyond the bill of lading? I don't believe so. I believe you look at the bill of lading. Then why do you talk about that letter? Well, because that's where the magistrate went. And the magistrate went... But I'm asking where you think we should go. I don't think... You think it rises and falls solely on the bill of lading? I do. And I think that the magistrate committed error when he got into the subjective opinions of what the parties thought standard industry terms meant. And so, for example, prepaid doesn't mean who's not going to pay. Prepaid means who is going to pay. And prepaid means the shipper pays. And so, while it does have the correlative effect of... But then, what do you... Under your analysis, what do you make of that non-recourse language? Well, and that's a great point. Well, let me ask you, what do you say, does it just disappear? It doesn't disappear, but it's inconsistent. So, if it's inconsistent, then what do you do? Don't you look to what the parties meant by that document? Why is it inconsistent? Why are you conceding that? Because I think that the document is inconsistent in that you can't have prepaid and the non-recourse. Well, you could have... Why couldn't you have prepaid by Klausner and non-recourse, again, by the consignee? Because then you'd mark third party if it was going to be Salem being responsible for the freight train. Right, but why couldn't the non-recourse apply to the consignee's rights to come back against the consignor? And if you look at the history of how the Bill of Lading was used, in 1994, it was used, and they had the non-recourse in there when they were paying the freight charges. And so, clearly, it doesn't mean what... Clearly, Klausner... What is your position that it means? Well, Klausner didn't know what it means, and I don't think that it has any effect in this because it's inconsistent with prepaid. And prepaid is the way that the parties treated their relationship before Salem was involved and after Salem was involved. But your argument is that the non-recourse language typed out and signed there, it means nothing. Well, you'd have to do the same thing that Illinois Steel and Jones Motor Lines did in trying to resolve it. But I'm asking how you resolve it. It has prepaid, and it also has what appears to be an attempt to establish non-recourse against the consignor. You would just say that language about non-recourse just goes away? Well, I think that what you do with that is you say that you can't have additional charges, such as accessorial charges, things of that nature, that were not envisioned at the beginning. So let's say that there was a load that had to be... ...at the point contemplated? Additional in the sense of like there's no loading dock at the destination, so they have to have a lift gate or some other service be provided at the destination. Well, that was not something that Klostner would have envisioned when they began this shipment. So that would be the kind of thing I would think it would apply to. Yes. No. I'll give you five seconds to wrap up if you'd like, Mr. Mosley. Well, Your Honor, thank you for hearing me, and it's a pleasure being before you. All right, thank you very much. We'll have the clerk adjourn the court, then we'll step down to Greek Council. This honorable court stands adjourned until tomorrow morning at 9.30. God save the United States and this honorable court. Thank you.
judges: Dennis W. Shedd, Allyson K. Duncan, Barbara Milano Keenan